**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THERESA BEDNARZ,**

     **Plaintiff,**

**v.**                                 **Case No: 8:12-cv-2827-T-35EAJ**

**CASTLE KEY INDEMNITY COMPANY**
**and ALLSTATE FIRE & CASUALTY**
**INSURANCE COMPANY,**

     **Defendants.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of: (1) Defendants' Motion for Summary Judgment or Partial Summary Judgment (Dkt. 31) and Plaintiff's Response in Opposition thereto (Dkt. 47); and (2) Plaintiff's Motion for Final Summary Judgment, or Alternatively Partial Summary Judgment, on Claims against Defendant, Castle Key (Dkt. 35) and Defendant's Response in Opposition thereto (Dkt. 41).   In connection with the motions, the parties filed a Stipulation of Agreed Material Facts (Dkt. 60), and Plaintiff filed a notice of supplemental of authority (Dkt. 61) and an additional statement regarding the Stipulation of Agreed Material Facts (Dkt. 62).   Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court orders that the motions are **DENIED IN PART** AND **GRANTED IN PART**.

## I.     BACKGROUND

Defendant Castle Key Indemnity Company ("Castle Key") issued a policy of insurance to Plaintiff Theresa Bednarz ("Plaintiff") and Almerick Dolan ("Dolan") for their home and contents, effective June 10, 2011 to June 12, 2012.   The Castle Key

homeowners policy named the Plaintiff and Dolan as the insureds and listed Wells Fargo Bank and its successors/assigns as the mortgagee.   Defendant Allstate Fire and Casualty Insurance Company ("Allstate") issued a policy of insurance to Plaintiff and Dolan for their vehicles, effective December 10, 2011 to June 10, 2012.   On March 9, 2012, a fire damaged Plaintiff's and Dolan's home, its contents, and a vehicle.   (Dkt.  60)  After Castle Key and Allstate denied Plaintiff's claims, Plaintiff filed the instant action alleging that Defendants breached their obligations under the respective policies. (Dkt. 1)

On the morning of the fire, Dolan was at home.   (Dkt. 35-2, p. 44)   Plaintiff had left for work and their children were at daycare and school.   (Dkt. 35-1, pp. 47-49, 53-54)   At approximately 7:55 a.m., a neighbor, Shawn Bernier, was sitting on her back porch and heard a fire alarm at Plaintiff's house.   She also saw white smoke coming out of the house.   Bernier walked to the house and banged on the front door.   Dolan came to the door, pulled the blind back, mouthed "I'm okay," and waved at her.   Bernier returned home, went to her back porch, and saw that the smoke had turned black.   She called 911.   The Hillsborough County Fire Department arrived and extinguished the fire. (Dkt. 34-1, p. 3-9; Dkt. 34-4)

When Plaintiff returned to the house, Dolan was in an ambulance and looked dazed, as if he did not know who she was.   (Dkt. 35-1, p. 53)   Dolan was transported by ambulance to Tampa General Hospital and was admitted to the psychiatric unit until mid-April 2012.   (Dkt. 35-1, p. 19)   He was ultimately diagnosed with schizophrenia. (Dkt. 35-2, p. 37)   On April 18, 2012, Dolan was arrested on first-degree arson charges.

(Dkt. 34-6)   On December 12, 2012, he was adjudicated not guilty by reason of insanity. (Dkt. 35-3)

In his deposition, Dolan testified that he knew that he set the fire, but he did not remember how the fire started.   (Dkt. 35-2, pp. 40, 47-49, 65-67, 71)   He recalled kicking a gas can into the house from the porch, but he could not recall pouring gas in the house.   (Dkt. 35-2, pp. 47-49)   He testified that he was pretty sure that he used matches to start the fire, but he did not recall getting the matches or lighting the fire. (Dkt. 35-2, pp. 66-67)

Fire Inspector Daniel Edwards determined that the fire was an incendiary fire. (Dkt. 34-8)   In addition, Castle Key's adjuster ordered a report on the origin and cause of the fire, which was completed by Senior Fire Investigator Frank Hutton, of Casalinova Investigations, Inc.   (Dkt. 34-9, p.1, 3; Dkt. 35-4, p. 34)   Hutton concluded:

> [I]t is my opinion that there were two separate and unrelated points of origin. First area of origin is at the floor area in the main living by the sliding doors and a heavily fire damaged couch.   The second area of fire origin is also near sliding doors in the family sitting room.   Also it is my opinion, based on the elimination and absence of all other heat sources in the area of origin, and characteristics of this fire loss that the first material ignited was a *flammable liquid (gasoline)*, and the ignition source of this fire in both locations was *an open flame due to an intentional human act.*

(Dkt. 34-9, p. 9 (emphasis in original))

Plaintiff notified Castle Key of her claim on the day of the fire.   She later provided two recorded statements and other documents, attended an Examination Under Oath ("EUO"), and allowed Castle Key to physically inspect the home.   (Dkt. 35-4, pp. 32, 34-35, 38, 43, 45, 47, 49-50; Dkt. 35-1, p. 31).   By letter dated August 9, 2012, Castle Key denied the claim based on Dolan's failure to attend his own EUO on three separate

occasions.   (Dkt. 35-5; Dkt. 34-10)   By letter dated August 14, 2012, Allstate denied Plaintiff's claim under a similar provision in the automobile policy.   (Dkt. 34-10, p. 6-7)

By letter dated September 7, 2012, Plaintiff's attorney inquired as to whether Castle Key would forward the dwelling coverage limits to the mortgagee listed on the policy.   (Dkt. 35-6)   By letter dated September 14, 2012, Castle Key answered that it would not forward the coverage limits to the mortgagee because the loss was excluded from coverage as an "intentional or criminal act" by an insured.   (Dkt. 35-7)

On December 17, 2012, Plaintiff filed the instant action for breach of contract against Castle Key (Count 1) and Allstate (Count 2), based on Defendants' failure to pay benefits to her or to other loss-payees, mortgagees, and third-party beneficiaries under the policy, including Wells Fargo.   (Dkt. 1)   In response, Defendants raised five affirmative defenses: (1) Dolan failed to provide a recorded statement, attend an EUO, or otherwise cooperate in the investigation; (2) Plaintiff and Dolan failed to file a sworn proof of loss form within 60 days of the loss; (3) Plaintiff and Dolan failed to execute the requested authorization forms relating to the mortgage records; (4) the intentional acts exclusions barred coverage; and (5) Plaintiff and Dolan concealed or misrepresented material facts or circumstances.   (Dkt. 15)

Castle Key and Allstate have filed a joint partial motion for summary judgment, arguing that the intentional acts exclusions bar coverage under both policies, based on Dolan's involvement in the fire.   Defendants do not seek summary judgment on their remaining affirmative defenses.   (Dkt. 31)

Plaintiff has filed a partial motion for summary judgment as to Castle Key only. Plaintiff argues that the intentional acts exclusions do not apply, and even if they do,

Castle Key is required to pay the mortgagee, Wells Fargo, in an amount equal to the dwelling coverage limits.   Plaintiff also argues that Castle Key may not rely on failure to cooperate as a defense to coverage because she substantially complied with the investigation and Castle Key has failed to demonstrate that it suffered any prejudice. (Dkt. 35)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.   Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)).   Which facts are material depends on the substantive law applicable to the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party.   Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).   A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial.   Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted).   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations

unsupported by facts.   Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)

("conclusory allegations without specific supporting facts have no probative value.").   "If

a party fails to properly support an assertion of fact or fails to properly address another

party's assertion of fact . . . the court may grant summary judgment if the motion and

supporting materials . . . show that the movant is entitled to it."   Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

As noted by the parties, "[t]he interpretation of an insurance contract is a question

of law."   Kattoum v. N.H. Indem. Co., 968 So. 2d 602, 604 (Fla. 2d DCA 2007). It is

undisputed that Florida law governs the interpretation of the policies in this case.

(Dkt. 31, p. 12; Dkt. 35, p. 12)   "Florida law provides that insurance contracts are

construed in accordance with the plain language of the policies as bargained for by the

parties."   Auto–Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).

Accordingly, the scope and extent of coverage is determined by the language and terms

of the policy and the policy terms are given their plain and ordinary meaning.   "It is a

cardinal principle of insurance law that where the provisions of an insurance policy are

clear and unambiguous, the terms of the policy will be accorded their plain meaning and

enforced as written."   Ernie Haire Ford, Inc. v. Univ. Underwriters Ins. Co., 541 F. Supp.

2d 1295, 1298 (M.D. Fla. 2008); see also Northland Cas. Co. v. HBE Corp., 160 F. Supp.

2d 1348, 1358 (M.D. Fla. 2001).   However, if the relevant policy language is susceptible

of more than one reasonable interpretation, the policy is considered ambiguous and

strictly construed against the drafter of the policy.   Anderson, 756 So. 2d at 34.

"[E]xclusionary clauses are construed even more strictly against the insurer than

coverage clauses."   Id.   While the insured has the burden of proving that a claim against

it is covered by the insurance policy, the insurer has the burden of proving an exclusion to coverage.   LeFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997).

**A.   Castle Key Homeowners Policy**

Section I of the Castle Key homeowners policy provides three types of property coverage relevant to this action: Dwelling Protection ("Coverage A"), Other Structures Protection ("Coverage B"), and Personal Property Protection ("Coverage C").   In relevant part, the policy contains the following coverage provisions:

> ***Losses We Cover Under Coverage A And B:***
> **We** will cover sudden and accidental direct physical loss to property described in **Coverage A – Dwelling Protection** and **Coverage B – Other Structures Protection** except as limited or excluded in this policy.
> . . .
>
> ***Losses We Cover Under Coverage C:***
> **We** will cover sudden and accidental direct physical loss to the property described in **Coverage C – Personal Property Protection**, except as limited or excluded in this policy, caused by:
> > 1. Fire or lightning.

(Dkt. 1-1, pp. 49, 54)

The parties do not dispute that the March 9, 2012 fire and associated damage constituted a "sudden and accidental direct physical loss" under the foregoing coverage provisions.   As discussed below, the parties do dispute whether: (1) the intentional acts exclusions bar coverage; (2) even if the intentional acts exclusions bar coverage, whether Castle Key must pay the Coverage A policy limits to Wells Fargo, as mortgagee; and (3) whether Plaintiff's and Dolan's failure to cooperate results in forfeiture of coverage.   These issues are addressed in turn.

### 1.      Intentional acts exclusions

In Castle Key's fourth affirmative defense (Dkt. 15, ¶ 26), Castle Key maintains that coverage for the losses is specifically excluded by the policy's intentional acts exclusions.   Specifically, the policy provides:

> ***Losses We Do Not Cover Under Coverage A And B***:
> **We** do not cover loss to the property described in **Coverage A - Dwelling Protection** or **Coverage B – Other Structures Protection** consisting of or caused by:
> . . .
>
> 9. Intentional or criminal acts of, or at the direction of any **insured person**, if the loss that occurs:
>      a) may be reasonably expected to result from such acts; or
>      b) is the intended result of such acts.
>
> This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

(Dkt. 1-1, p. 50)

> ***Losses We Do Not Cover Under Coverage C***:
> **We** do not cover loss to the property described in **Coverage C – Personal Property Protection** caused by or consisting of:
>
> . . .
>
> 9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
>      a) may be reasonably expected to result from such acts; or
>      b) is the intended result of such acts.
>
> This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

(Dkt. 1-1, pp. 55-56)

Both Plaintiff and Castle Key have moved for summary judgment on the applicability of these exclusions.

### a.   Ambiguity

Before addressing the parties' arguments regarding whether an "intentional act" occurred, the Court must address Plaintiff's argument that the exclusions are ambiguous.   Plaintiff maintains that Section II of the policy contains a similar intentional acts exclusion pertaining to Family Liability Protection ("Coverage X"), as follows:

> ***Losses We Do Not Cover Under Coverage X***:
> 1. We do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
> a) such **insured person** lacks the mental capacity to govern his or her conduct[.]

> (Dkt. 1-1, p. 67)

Unlike the Coverage A, B, and C intentional acts exclusions, the Coverage X exclusion specifies that coverage is excluded even if the insured lacks mental capacity to govern his conduct.   Plaintiff argues that Castle Key's omission of this additional language in the Coverage A, B, and C exclusions demonstrates that Castle Key did not intend for those exclusions to apply if the insured lacked mental capacity to govern his conduct.

The Court rejects this argument. The intentional acts exclusions in Coverages A, B, and C are not ambiguous because the plain language of the exclusions is not susceptible to more than one reasonable interpretation.   Indeed, Plaintiff offers no countervailing interpretation of these provisions.   Moreover, even if the Court were to consult the Coverage X exclusion, the additional language in that exclusion does not create an ambiguity: subsection (a) merely elaborates on the meaning of the intentional acts exclusion by specifying that a lack of mental capacity does not preclude an intentional act.   As Plaintiff recognizes, this was likely in response to the Florida Supreme Court

decision in <u>Prasad v. Allstate</u>, discussed below, which held that an insane insured may commit an intentional act.   That Castle Key chose to clarify an exclusion in one section of its policy does not permit this Court to rewrite an exclusion in another section of the policy.   <u>See</u> <u>Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.</u>, 133 So. 3d 494, 497 (Fla. 2014) ("[c]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.").

### b.   Applicability

In her motion for summary judgment, Plaintiff's primary argument is that Castle Key has not met its burden under Florida law to demonstrate that the intentional acts exclusions apply.   In particular, Plaintiff maintains that Castle Key is unable to prove: (1) that Dolan set the fire; or (2) that he did so intentionally.   In its cross-motion for summary judgment, Castle Key argues that it is undisputed that Dolan intentionally set the fire.

The Court rejects Plaintiff's first argument.   Dolan specifically testified during his deposition as follows:

Q.: So let's go back to – I mean, you know, you set the fire, right?

A.: Yeah.

(Dkt. 35-2, p. 40)

Plaintiff identifies no specific facts in evidence calling Dolan's testimony into dispute. <u>See</u> <u>Josendis v. Wall to Wall Residence Repairs, Inc</u>., 662 F.3d 1292, 1315 (11th Cir. 2011) ("[T]he non-moving party cannot satisfy its burden if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact.")   Plaintiff does argue that Dolan's deposition testimony is not competent because he was adjudicated not guilty by

reason of insanity; however, Plaintiff cites no evidence indicating that Dolan was incompetent at the time of his deposition in May 2013.

With respect to Plaintiff's second argument---that there is not sufficient evidence that the fire was intentional---the Court finds that Dolan's intent is a disputed issue of material fact.   Under Florida law, it is well-established that an injury inflicted by an insane person may be intentional, for purposes of an intentional acts exclusion.   Specifically, the Florida Supreme Court has held that a person who escapes criminal liability by reason of insanity may still "intend" an act for purposes of a civil insurance claim, if the person "understands the physical nature and consequences of the act."   Prasad v. Allstate, 644 So. 2d 992, 994-95 (Fla. 1994).   As the court explained:

> In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment. For example, an individual may kill in self-defense. The executioner may kill with the sanction of the State. A soldier may injure or kill under rules of combat. This conduct is intentional, but it is also excusable. Likewise, an individual may be excluded from penalty if he is insane at the time he commits a criminal act. As here, he may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused from the imposition of the usual sanctions. The absence of punishment, however, does not retrospectively expunge the original intention.

Id. at 995 (internal quotation marks omitted).   Accordingly, the court held that, where a psychotic insured repeatedly stabbed a family member, he was subject to the intentional acts exclusion under the reasoning that "[w]hile one might 'accidentally' hit another with a knife during a spasmodic fit, the act of repeatedly stabbing [the victim] under the allegations of this case denotes [the insured's] intentional assault."   Id.

Based on this authority, the relevant question in this case is whether Dolan understood the physical nature and consequences of his actions.   In contrast to Prasad, there were no witnesses to Dolan's actions.   Thus, a determination as to whether Dolan

understood the physical nature and consequences of his actions depends in large part on Dolan's testimony that he does not remember the circumstances of the fire.   This, in turn, will require an assessment of Dolan's credibility.   And it is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."   Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012).

Although there is a factual issue as to the application of the intentional acts exclusions, this does not mandate summary judgment in Plaintiff's favor, as she argues. While it is Castle Key's burden to prove the exclusion, there is sufficient evidence by which a jury could find that Dolan acted with the requisite intent.   Among other things, that evidence includes Dolan's testimony that he recalled kicking a gas can into the house, Dolan's interaction with his neighbor during the fire---indicating that he was alert and responsive, and the opinions of Inspector Edwards and Inspector Hutton that the fire was intentional and incendiary, with two separate and unrelated points of origin.[1]

As a final point, Plaintiff claims that the applicability of the intentional acts exclusions is called into question by the fact that Castle Key initially denied Plaintiff's claim based on Dolan's failure to cooperate, not based on the intentional acts exclusions.   (Dkt. 35-5; Dkt. 49-1, pp. 7-10; Dkt. 35-4, pp. 59-63)   Nonetheless, Plaintiff has not alleged

---

[1] Plaintiff has argued that the Inspectors' reports contain inadmissible hearsay.   (Dkt. 47, pp. 8-11)   The Court finds that the reports may be considered at the summary judgment stage to the extent they are based on first-hand factual observations and opinions, and to the extent they can be reduced to admissible form at trial. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1278 (11th Cir. 2009); Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999). Of note, Plaintiff has not objected to the reports' authenticity, or to Defendants' identification of Edwards and Hutton as expert witnesses for trial.   (See Dkt. 65, pp. 12, 14)

estoppel or waiver claims in this case, so as to preclude Castle Key's reliance on the intentional acts exclusions.   (See Dkt. 1)

Based on the foregoing, the Court **denies** Plaintiff's and Castle Key's cross-motions for summary judgment on the applicability of the intentional acts exclusions under Coverages A, B, and C.

### c.    Joint obligation clause

In Defendants' motion for summary judgment, Castle Key maintains that, if Dolan's conduct was subject to an intentional acts exclusion, coverage would not only be barred for Dolan, it would be barred for Plaintiff, pursuant to the policy's "joint obligation" clause. Although the Court has found that disputed issues of fact preclude summary judgment on the intentional acts exclusions, the applicability of the joint obligation clause will be at issue if a jury finds that Dolan acted with the requisite intent.   Therefore, the Court will address Castle Key's argument on this provision in order to narrow the remaining legal issues.

The policy's joint obligation clause provides: "[t]he terms of this policy impose joint obligations on the persons defined as an **insured person**.   This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**."   (Dkt. 1-1, p. 46)   The parties do not dispute that, as named insureds, Dolan and Plaintiff are each an "insured person" under the policy.   (See Dkt. 1-1, pp. 4, 44)   In response to Castle Key's motion,

Plaintiff does not dispute that, if Dolan's conduct fell within the intentional acts exclusion, she would be barred from coverage as well.[2]

The Court therefore **grants** Castle Key's motion for summary judgment on the applicability of the joint obligation clause, but only to the extent that, if an intentional acts exclusion is found to apply based on Dolan's conduct, the exclusion would likewise bar coverage for Plaintiff.

### d.    Additional living expenses

In addition to Coverages A, B, and C, the Castle Key policy provides for payment of additional living expenses as follows:

### *Additional Protection*

### 1. Additional Living Expense

> a) **We** will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under **Coverage A – Dwelling Protection, Coverage B – Other Structures Protection or Coverage C – Personal Property Protection** makes **your residence premises** uninhabitable.

(Dkt. 1-1, p. 57)

Plaintiff moves for summary judgment on this provision, arguing that it is not subject to an intentional acts exclusion.

The above provision specifies that additional living expenses will be paid only when a covered physical loss occurs under Coverages A, B, or C.  As discussed above, there are disputed issues of material fact as to whether the intentional acts

---

[2] Plaintiff does maintain that the joint obligation clause does not eliminate Castle Key's liability to Wells Fargo, as mortgagee, an issue addressed below.

exclusions bar coverage under Coverages A, B, or C.   Plaintiff's motion is therefore **denied** as to additional living expenses.

Because Plaintiff has not established entitlement to additional living expenses as a matter of law, the Court does not consider Plaintiff's affidavit regarding the amount of living expenses she has incurred.   (See Dkt. 35-9)   Castle Key's motion to strike this affidavit (Dkt. 41, p. 16) is therefore **denied as moot**.

### e.   Mortgagee clause

In her motion for summary judgment, Plaintiff also maintains that, even if the intentional acts exclusion in Coverage A applies, Castle Key must pay Wells Fargo, as mortgagee, an amount equal to the Coverage A limits of $278,871.00.   (Dkt. 1-1, p. 6) In relevant part, the policy provides:

**16.   Mortgagee**

A covered loss will be payable to the mortgagees named on the Policy Declarations to the extent of their interest and in the order of precedence.   All provisions of Section I of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions[.]

. . .

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so.

(Dkt. 1-1, p. 66)

In response to the motion, Castle Key acknowledges that the mortgagee's interests are protected under the policy, notwithstanding the intentional acts exclusion.   (See Dkt. 41, p. 13).   Castle Key also does not contest Plaintiff's standing to raise this argument.   Cf. Schlehuber v. Norfolk & Dedham Mut. Fire Ins. Co., 281 So. 2d 373, 375 (Fla. 3d DCA 1973); Kelly v. Balboa Ins. Co., 897 F. Supp. 2d 1262, 1266 (M.D. Fla. 2012).   However, Castle Key does argue that it does not owe the entire coverage limits to Wells Fargo.

As authority for her argument that Castle Key must pay the policy limits of $278,871.00, Plaintiff cites section 627.702 of the Florida Statutes, which provides that "[i]n the event of the total loss of any building [or] structure," an insurer's liability "shall be in the amount of money for which such property was so insured."   Fla. Stat. § 627.702(1)(a).   Yet, as Defendant argues, Plaintiff wholly fails to address whether her house was subject to a "total loss," sufficient to trigger this provision.

Accordingly, the Court turns to the policy language, which provides that a loss will be payable to the mortgagee "to the extent of their interest."   (Dkt. 1-1, p. 66)   Based on this provision, Castle Key maintains that it is liable only for the amount owed under the mortgage.   Pamela Bennett, a Castle Key claims representative, testified in her deposition that it was Castle Key's intent to fully pay the mortgage amount upon receipt of an appropriate proof of loss form.   (Dkt. 35-4, pp. 9, 68).   Bennett also testified that neither Plaintiff nor Wells Fargo ever submitted a proof of loss, and Plaintiff also failed to execute an authorization form permitting Castle Key to communicate with Wells Fargo. (Dkt. 35-4, pp. 68-69; see also Dkt. 57-6)

Plaintiff has not addressed these points in her motion.   The Court therefore **denies** Plaintiff's motion for summary judgment on the applicability of the mortgagee clause.

### 2.   Failure to cooperate

Finally, Plaintiff moves for summary judgment on Castle Key's first, second, and third affirmative defenses, all of which allege that Plaintiff and/or Dolan failed to fulfill their obligations under the policy.[3]   In particular, Castle Key alleged that: (1) Dolan failed to provide a recorded statement, attend an EUO, and otherwise cooperate with the investigation; (2) Plaintiff and Dolan failed to submit the requisite proof of loss form within 60 days of the loss; and (3) Plaintiff and Dolan failed to execute the requested authorization forms regarding their mortgage.   (See Dkt. 1, ¶¶ 23-25)

Section I of the Castle Key policy provides as follows:

### 3. What You Must Do After A Loss

In the event of a loss to any property that may be covered by this policy, **you** must:

. . .

f) as often as **we** reasonably require:

. . .

2) at our request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

. . .

---

[3] Plaintiff also moves for summary judgment on the fifth affirmative defense, which Plaintiff construes as a defense based on failure to cooperate. (See Dkt. 35, p. 20-21)   However, this defense is actually based on the fraud exclusion under the policy, which Plaintiff does not acknowledge or specifically address in her motion.   (See Dkt. 15, ¶ 27)   Plaintiff's motion is therefore **denied** as to the fifth affirmative defense.

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

. . .

1) the interest **insured persons** and others have in the property, including any encumbrances[.]

(Dkt. 1-1, p. 60)

In the same section, the policy contains a "no-action" clause, as follows:

**11. Suit Against Us**
No suit or action may be brought against us unless there has been full compliance with all policy terms.

(Dkt. 1-1, p. 65)

Under Florida law, proof-of-loss obligations and examinations under oath have historically been considered conditions precedent to suit, when coupled with similar no-action clauses.   See Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 304 (Fla. 4th DCA 1995); Edwards v. State Farm Fla. Ins. Co., 64 So. 3d 730, 733 (Fla. 3d DCA 2011); Starling v. Allstate Floridian Ins. Co., 956 So. 2d 511, 513-14 (Fla. 5th DCA 2007); Allstate Floridian Ins. Co. v. Farmer, 104 So. 3d 1242, 1246 (Fla. 5th DCA 2012); cf. State Farm Mut. Auto. Ins. Co. v. Curran, 135 So. 3d 1071, 1080 (Fla. 2014) (in claim for uninsured motorist benefits, holding that policy provision requiring a compulsory medical examination was a condition subsequent).   A material breach of a condition precedent relieves an insurer of its obligations under the contract.   Starling, 956 So. 2d at 513.   "If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury."   Id. Additionally, a condition precedent may be avoided by showing that the insurer was not prejudiced by the insured's non-compliance with the condition.   Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985).   Whether an insured's failure to cooperate

is substantially prejudicial is ordinarily a question of fact.   Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1149-50 (11th Cir. 2010) (quoting Ramos v. Nw. Mut. Ins. Co., 336 So. 2d 71, 75 (Fla. 1976)).[4]

Here, Plaintiff asserts both substantial compliance and lack of prejudice.   In particular, Plaintiff argues that she promptly notified Castle Key of the claim, provided two recorded statements and other documents, attended her EUO, and allowed Castle Key to physically inspect the home.   Plaintiff also maintains that Castle Key was not prejudiced by Dolan's failure to attend his EUO because Dolan could not have provided any useful information, due to his mental incapacity and inability to recall the events leading up to the fire.   Further, Plaintiff points out that Pamela Bennett, the Castle Key claims representative, testified that Plaintiff's failure to provide an authorization form was not the reason the claim was denied.   (See Dkt. 35-4, p. 61)

In response, Castle Key does not assert that it suffered any prejudice as a result of Dolan's failure to attend his EUO or provide a recorded statement.   Because Plaintiff has adequately discharged her burden as the party moving for summary judgment, and because Castle Key fails to provide any meaningful response, the Court finds that Plaintiff's motion is due to be **granted** as to Castle Key's first affirmative defense in its entirety and as to the third affirmative defense to the extent it asserts failure to cooperate based on Dolan's failure to attend his EUO or provide a recorded statement (Dkt. 15,

---

[4] There is a split among the Florida District Courts of Appeals as to whether the insured or the insurer bears the burden of proving prejudice. See Biscayne Cove Condominium Ass'n v. QBE Ins. Corp., 971 F. Supp. 2d 1121, 1137-38 (S.D. Fla. 2013) (surveying cases).   For purposes of this motion, even if Plaintiff has the burden, the outcome remains the same.

¶¶ 23, 25).   See Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir.2010) ("[o]nce the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial.")

Castle Key does argue that it was substantially prejudiced by Plaintiff's failure to provide the requisite proof of loss form as well as an authorization form.   Specifically, Castle Key maintains that, had Plaintiff submitted a proof of loss form, the form would have specified Wells Fargo's mortgage interest in the property, allowing Castle Key to make payment to Wells Fargo and avoid this lawsuit.   Likewise, Castle Key maintains that the authorization form would have allowed it to obtain the mortgage information directly from Wells Fargo.

In her motion, Plaintiff does not argue that she substantially complied with the proof-of-loss requirement, nor does she provide any explanation for her apparent failure to comply.   Rather, she suggests that any failure to cooperate may have been waived by Castle Key's payment of hotel expenses.   (See Dkt. 35-1, p. 58)  Plaintiff's authority on this point is inapposite, as it involved a settlement offer, which the court held constituted an admission of liability and a waiver of the policy's requirement that the insured provide a formal proof of loss.   See Llerena v. Lumbermens Mut. Cas. Co., 379 So. 2d 166, 167 (Fla. 3d DCA 1980); see also Am. Capital Assur. Corp. v. Courtney Meadows Apartment, L.L.P., 36 So. 3d 704, 706 (Fla. 1st DCA 2010).   In this case, Plaintiff identifies no admission of liability by Castle Key.

Because Castle Key has adequately raised a material issue of fact as to prejudice, Plaintiff's motion is **denied** as to Castle Key's second affirmative defense in its entirety,

20

and as to the third affirmative defense to the extent it is premised on failure to complete

an authorization form (Dkt. 15, ¶¶ 24, 25).

## B.   Allstate Automobile Policy

Similar to the Castle Key policy, the Allstate policy includes an intentional acts

exclusion and a joint obligation clause.   In Defendants' joint motion, Allstate seeks

summary judgment on these provisions.

In relevant part, the Allstate policy provides:

**Auto Comprehensive Insurance
Coverage HH**

**[W]e** will pay for direct and accidental loss to the **insured auto** or a non-
owned **auto** not caused by collision. Loss caused by . . . fire . . . is covered.

**Exclusions - What is Not Covered.**
These coverages do not apply to:

1. **Property Damage** caused by the:
    a. intentional acts;
    b. criminal acts, other than traffic violations defined as infractions under
       Florida law, or;
    c. omissions,
    of an **insured person,** or done at the direction of an **insured person**
    which are designed to produce loss or damage.

    This exclusion applies even if:
    a. an **insured** lacks the mental capacity to control or govern his or her
       own conduct;
    b. an **insured person** is temporarily insane or temporarily lacks the
       mental capacity to control or govern his or her conduct or is
       temporarily unable to form any intent to cause **property damage**;
    c. such **property damage** is of a different kind or degree than
       intended[.]

This exclusion applies regardless of whether an **insured person** is actually
charged with, or convicted of, a crime.

This exclusion precludes coverage for any **insured persons** under the
policy regardless of whether the person seeking coverage participated in
any way in the intentional or criminal acts or omissions[.]

(Dkt. 33-1, pp. 52, 55)

The parties do not dispute that both Plaintiff and Dolan are "insured persons" under the automobile policy.

For the reasons discussed in connection with the Castle Key homeowners policy, the Court finds that there is a material issue of disputed fact as to the applicability of the intentional acts exclusion.   As a result, Allstate's motion for summary judgment is **DENIED** as to the applicability of the intentional acts exclusion.   To the extent that the intentional acts exclusion is found to apply based on Dolan's conduct, the exclusion's joint obligation clause would bar coverage for Plaintiff.   Allstate's motion is therefore **GRANTED** on that legal issue, subject to a finding of fact as to the intent of Dolan.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Summary Judgment or Partial Summary Judgment (Dkt. 31) is **DENIED IN PART** AND **GRANTED IN PART**, as set forth herein.

2. Plaintiff's Motion for Final Summary Judgment, or Alternatively Partial Summary Judgment, on Claims against Defendant, Castle Key (Dkt. 35) is **DENIED IN PART** AND **GRANTED IN PART**, as set forth herein.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of September, 2014.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

22